## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| FERRELL COMPANIES, INC., as Plan Sponsor and Plan Administrator of the Ferrell Companies, Inc., Employee Stock Ownership Plan,<br><br>        Plaintiff,<br><br>   v.<br><br>GREATBANC TRUST COMPANY, Directed Trustee of the Ferrell Companies, Inc. Employee Stock Ownership Trust,<br><br>        Defendant. | Case No. 2:19-CV-2656-JAR-ADM<br><br>**GREATBANC TRUST COMPANY'S VERIFIED ANSWER, DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS** |
| GREATBANC TRUST COMPANY, Trustee of the Ferrell Companies, Inc. Employee Stock Ownership Trust,<br><br>        Counterclaim-Plaintiff,<br><br>   v.<br><br>FERRELL COMPANIES, INC., as Plan Sponsor and Plan Administrator of the Ferrell Companies, Inc., Employee Stock Ownership Plan,<br><br>        Counterclaim-Defendant. | |

## VERIFIED ANSWER AND DEFENSES TO COMPLAINT

Defendant GreatBanc Trust Company ("GreatBanc"), for its Verified Answer to the Complaint ("Complaint") filed by Plaintiff Ferrell Companies, Inc. ("Ferrell" or the "Company") in this action admits, denies and alleges as follows. Unless expressly admitted, all allegations in the Complaint are denied. To the extent that the Complaint's introductory paragraph and headings reflect allegations of fact, those allegations are denied.

## PARTIES

1.      GreatBanc admits that Ferrell is a Kansas corporation with its headquarters and principal place of business in Overland Park, Kansas and that Ferrellgas, L.P., engages in the marketing and sale of propane products in the United States.

2.      GreatBanc admits the allegations in paragraph 2.

## JURISDICTION AND VENUE

3.      GreatBanc admits that this action purports to assert claims arising out of alleged violations of obligations imposed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA"), and that jurisdiction is proper. GreatBanc denies the remaining allegations in this paragraph.

4.      GreatBanc admits the allegations in paragraph 4.

5.      By asserting the Counterclaims set forth in this pleading, GreatBanc submits to personal jurisdiction in this action and consents to venue in this District.

## FACTS

6.      To the extent paragraph 6 refers to certain documents, those documents speak for themselves, and GreatBanc denies any characterization of them. GreatBanc otherwise lacks information sufficient to respond to the allegations in paragraph 6.

7.      To the extent paragraph 7 refers to certain documents, those documents speak for themselves, and GreatBanc denies any characterization of them. GreatBanc admits that LaSalle National Bank was its predecessor as Trustee. GreatBanc otherwise lacks information sufficient to respond to the allegations in paragraph 7.

8.      To the extent paragraph 8 refers to certain documents, those documents speak for themselves, and GreatBanc denies any characterization of them. GreatBanc otherwise denies the

4818-7177-8219 v1

remaining allegations in paragraph 8.  GreatBanc further avers that it has at all times acted in accordance with its duties as an ERISA fiduciary.

9.      GreatBanc denies the allegations in paragraph 9 and avers that Ferrell's business has suffered substantially in recent years.

10.     GreatBanc denies the allegations in paragraph 10 and avers on information and belief that the Department of Labor has not "required and directed that [Ferrell] replace [GreatBanc] as directed Trustee."

11.     GreatBanc denies the allegations in paragraph 11, except admits that it has been approached by third parties interested in engaging in a transaction with Ferrell and its affiliates.

12.     GreatBanc denies the allegations in paragraph 12, and avers that it has at all times acted in furtherance of its duties as an ERISA fiduciary.

13.     To the extent paragraph 13 refers to certain documents, those documents speak for themselves, and GreatBanc denies any characterization of them.  GreatBanc otherwise denies the allegations in paragraph 13 and avers on information and belief that the Department of Labor has made no "determination that [Ferrell] replace [GreatBanc] and retain a successor Trustee."

14.     To the extent paragraph 14 and its attendant footnote refer to certain documents, those documents speak for themselves, and GreatBanc denies any characterization of them.  GreatBanc otherwise denies the remaining allegations in paragraph 14 and its attendant footnote, except admits that it requested direction from Ferrell to replace the board with new directors.  GreatBanc further avers that its request was in accordance with and furtherance of its duties as an ERISA fiduciary, and, if implemented, would benefit the Ferrell Companies, Inc. Employee Stock Ownership Plan, including avoiding irreparable harm.

## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

15.     GreatBanc restates and incorporates its responses to all paragraphs of the Complaint as if fully set forth herein.

16.     GreatBanc admits that an actual controversy exists between it and Ferrell as set forth in the Counterclaims asserted by GreatBanc in this pleading.  GreatBanc denies the remaining allegations in paragraph 16 and avers that it has at all times acted in accordance with, and in furtherance of, its duties as an ERISA fiduciary.

17.     GreatBanc admits that Plan Participants face a risk of immediate irreparable harm without declaratory and injunctive relief – the relief requested by GreatBanc in its Counterclaims. GreatBanc otherwise denies the allegations in paragraph 17.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

18.     GreatBanc restates and incorporates its responses to all paragraphs of the Complaint as if fully set forth herein.

19.     GreatBanc denies the allegations in paragraph 19.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

20.     GreatBanc restates and incorporates its responses to all paragraphs of the Complaint as if fully set forth herein.

21.     GreatBanc denies the allegations in paragraph 21.

## FOURTH CAUSE OF ACTION
### (Tortious Interference)

22.     GreatBanc restates and incorporates its responses to all paragraphs of the Complaint as if fully set forth herein.

23.     GreatBanc denies the allegations in paragraph 23.

4818-7177-8219 v1

## PRAYER FOR RELIEF

GreatBanc denies that Ferrell is entitled to the relief requested in its prayer for relief.

## DEMAND FOR JURY TRIAL

No response is required from GreatBanc.

## DEFENSES

For its separate and independent defenses in this action, and without conceding that it bears the burden of proof or persuasion as to any defense, GreatBanc alleges as follows, based on the facts known to it at this time:

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred, in whole or in part, because plaintiff has not suffered any legally cognizable injury or damage by virtue of any conduct alleged against GreatBanc.

### Third Defense

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of unclean hands, waiver, laches, ratification and/or estoppel.

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate damages.

### Fifth Defense

Plaintiff's claims are barred, in whole or in part, because GreatBanc did not violate any duty owed to plaintiff.

4818-7177-8219 v1

### Sixth Defense

Plaintiff's claims are barred, in whole or in part, because, at all times alleged in the Complaint, GreatBanc acted in accordance with, and in furtherance of, its duties as an ERISA fiduciary and Plaintiff has breached and is continuing to breach its ERISA fiduciary duties.

### Seventh Defense

Plaintiff's claims are barred, in whole or in part, because GreatBanc did not cause any damages to plaintiff.

### Eighth Defense

Plaintiff's claims are barred, in whole or in part, because the alleged damages, if any, are speculative and because of the impossibility of the ascertainment and allocation of the alleged damages.

### Ninth Defense

Plaintiff's claims for injunctive relief are barred because plaintiff is unable to show a likelihood of success on the merits, irreparable harm, balance of harm between the parties or that its requested injunction would be in the public interest.

### RESERVATION OF RIGHTS

GreatBanc expressly reserves the right to amend and/or supplement this answer, its defenses and all other pleadings. GreatBanc asserts all defenses that may be revealed during the course of discovery or other investigation.

4818-7177-8219 v1

# VERIFIED COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff GreatBanc hereby asserts its Counterclaims against Plaintiff/Counterclaim-Defendant Ferrell as follows:

## PRELIMINARY STATEMENT

1.     This litigation is the result of GreatBanc's tireless efforts to avert financial disaster for the stock plan benefits of thousands of employees – efforts that Ferrell has thwarted at every turn.  Having now been sued for honoring its fiduciary duties under ERISA, GreatBanc asserts counterclaims in its capacity as Trustee of the Ferrell Companies, Inc. Employee Stock Ownership Trust (the "Trust"), Ferrell's sole shareholder, seeking a declaration, preliminary and permanent injunctive relief, a temporary restraining order and other relief to prevent Ferrell from further breaching its fiduciary duties as Plan Administrator under ERISA and obstructing valid corporate action by GreatBanc in furtherance of its ERISA fiduciary duties.

2.     For over 13 years, GreatBanc has faithfully discharged its ERISA fiduciary obligations to preserve the assets of the Ferrell Companies Employee Stock Ownership Plan (the "Plan," and together with the Trust, the "ESOP").  Ferrell cannot say the same.

3.     As Plan Administrator, Ferrell has overseen a cataclysmic plunge in the value of the Plan's assets, to the detriment of Plan beneficiaries.  Compounding this mismanagement, Ferrell has staunchly denied GreatBanc's requests for information and opposed GreatBanc's efforts to mitigate the damage.  Finally, on October 9, 2019, apparently fed up with GreatBanc's repeated attempts to convince the Ferrell Board of Directors (the "Board") to consider viable options to rescue Plan assets, Ferrell noticed GreatBanc's termination as Trustee, effective November 8, 2019.

4.     Faced with a Plan Administrator ignoring its fiduciary duties under ERISA and a benefits plan that would essentially evaporate if left under the stewardship of the current Board,

GreatBanc issued a request for direction (the "Request") to Ferrell to replace the Board with an eminently well-qualified slate of new directors (the "New Board") prepared to do what is necessary to try to pull the Company out of its tailspin and salvage Plan assets. Requesting direction from the Plan Administrator was deliberate. GreatBanc appreciated that taking more drastic action to replace the Board would risk publicizing the dispute and could pose further harm to Plan assets. Ferrell did not share GreatBanc's scruples, publicly filing this lawsuit the next day without any warning to GreatBanc or other response to the Request.

5. Contrary to Ferrell's allegations in this lawsuit, it is Ferrell who is ignoring ERISA's strictures, seeking to entrench its current Board, and hoping to mask its own systemic breaches of fiduciary duty to the Plan and its participants and beneficiaries. Not coincidentally, Ferrell acted to remove GreatBanc as Trustee less than a week before the NYSE-listed Ferrellgas master limited partnership was compelled to publicly disclose exactly the type of devastating financial development that GreatBanc feared was lurking: a declared default under a debt covenant creating serious doubt as to the continuing viability of its operating subsidiary as a going concern.

6. At that point, GreatBanc, whose fiduciary duties as Trustee continued through November 8, 2019, took the only steps it could to faithfully discharge those duties under ERISA and try to safeguard the remaining value of the Plan's assets.

**PARTIES**

7. Defendant/Counterclaim-Plaintiff GreatBanc is an Illinois corporation, with its principal place of business in Lisle, Illinois, that serves as the Trustee for the ESOP. GreatBanc is an ERISA fiduciary that specializes in managing Employee Stock Ownership Plans and has provided trustee services for plans with assets ranging from about $1 million to $9 billion.

4818-7177-8219 v1

8.      Plaintiff/Counterclaim-Defendant Ferrell is a Kansas corporation with its principal place of business in Overland Park, Kansas.  Ferrell is the ESOP's Plan Administrator and named fiduciary.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over GreatBanc's claims pursuant to 28 U.S.C. §1331 because this matter arises out of Ferrell's fiduciary obligations under ERISA, 29 U.S.C. §1001 *et seq*.  The Court also has jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.  Furthermore, the Court has supplemental jurisdiction over GreatBanc's claims pursuant to 28 U.S.C. §1367.

10.     Ferrell has submitted to the personal jurisdiction of this Court by filing the Complaint.

11.     Venue is proper in the District of Kansas pursuant to 28 U.S.C. §1391(b)(2).

## FACTS

A.      **The ESOP**

12.     On or about August 1, 1997, Ferrell established the Plan.  The Plan is Ferrell's sole shareholder, owning 100% of Ferrell's stock.

13.     The Plan is an employee stock ownership plan as defined in ERISA section 407(d)(6) and section 4975(e)(7) of the Internal Revenue Code.  It provides retirement benefits for certain employees of Ferrell and certain related companies.

14.     At the same time the Plan was established, Ferrell and LaSalle National Bank formed the Trust, of which LaSalle National Bank was appointed trustee.  The Trust holds the Plan's assets (*i.e.*, 100% of Ferrell shares) on behalf of the beneficiaries (Ferrell employees).

15.     In or around 2005, GreatBanc succeeded LaSalle National Bank as Trustee of the ESOP.  GreatBanc semi-annually determines the value of the Plan's shares and is generally required to follow directions received from the Plan Administrator, Ferrell, pursuant to the Plan on matters as to which GreatBanc is a "directed" trustee.  In these capacities, GreatBanc is a fiduciary pursuant to ERISA and owes fiduciary duties to the Plan and its participants including, among other things, the fiduciary duty of prudence.

**B.      The Value of Ferrell Stock – and the Plan's Assets – Continually Deteriorate Under Ferrell's and its Board's Watch**

16.     Under Ferrell's stewardship, the value of the Plan's investment in Ferrell stock has plummeted, due in large part to the performance of Ferrellgas Partners, L.P. ("Ferrellgas"), a publicly-traded master limited partnership listed on the New York Stock Exchange.[1]  Ferrellgas's unit price has been sharply declining for years, and the units are currently at risk of being delisted because they have been valued under $1.00 for several of the past few months.

17.     The fall has been breathtaking.  In November 2014, Ferrellgas's unit price reached a high of $28 per unit; this year, the highest trading price was $1.74 in March, falling to $0.60 by late October.  Overall, this represents a ***98% decline***.



---

[1] Ferrell's wholly-owned subsidiary, Ferrellgas Inc. ("FGI"), is the general partner of, and shares the same board of directors as, Ferrellgas.  Through Ferrell and FGI, the Plan owns about 25% of Ferrellgas's publicly-traded units.

18.     Ferrellgas's woes are not limited to its cratered unit value.  Its net leverage (ratio of debt to earnings) is more than double the industry average, and Ferrell and its related companies are saddled with approximately $2.2 billion in debt.

19.     On October 15, 2019, Ferrellgas filed its annual report for 2019 on Form 10-K (the "10-K"),[2] in which it publicly disclosed that TPG Specialty Lending, Inc. ("TPG") had taken the position that Ferrellgas's operating partnership had defaulted on a senior secured term loan, immediately accelerating $275 million in principal debt:

> The operating partnership failed to deliver certain quarterly financial information for the fiscal quarter ended July 31, 2019, and a related required compliance certificate, to TPG by the applicable deadline of September 24, 2019.  ***TPG delivered a notice of default with respect to these matters on September 25, 2019***, and the operating partnership delivered all required financial information and the related compliance certificate to TPG on September 25, 2019.  The operating partnership believes that … no event of default presently exists.  ***TPG, however, has advised the operating partnership of TPG's belief that the event of default cannot be cured by delivery of the required information after the deadline and therefore that the event of default is continuing and will continue unless and until it is waived under the terms of the financing agreement***.  The parties have attempted to agree on a waiver of the disputed event of default.  However, ***as of the filing of this Annual Report on Form 10-K, no such agreement has been reached***, as the terms proposed by TPG were not acceptable to the operating partnership and, in the operating partnership's opinion, were not commercially reasonable under the circumstances.  As a result of the failure to reach an agreement, ***the operating partnership and TPG continue to dispute the existence of an event of default under the financing agreement***.
>
> \*\*\*
>
> ***As a result of the notice of default delivered by TPG, the operating partnership has classified the $275 million Senior secured term loan as Current Portion of Long-Term Debt on the Consolidated Balance Sheet***.  (Emphasis added.)

20.     The filing further disclosed that:

> TPG has advised the operating partnership of ***TPG's belief that the audited consolidated financial statements of the operating partnership and its subsidiaries for the fiscal year ended July 31, 2019, as included in this Annual Report on Form 10-K, do not satisfy the requirements set forth in the financing agreement*** for delivery of annual audited financial statements because ***the report of our independent***

---

[2] Excerpts of Ferrellgas's Form 10-K for fiscal year 2019 are attached hereto as Exhibit 1.

*registered public accounting firm on such financial statements includes an "explanatory paragraph" regarding substantial doubt as to the operating partnership's ability to continue as a going concern*, notwithstanding that the independent registered public accounting firm's report expresses an unqualified opinion with respect to such financial statements. …. [B]ased on the position previously articulated by TPG on this matter, *the operating partnership believes that TPG may assert that an event of default has occurred under the financing agreement with respect to the operating partnership's compliance with the covenant requiring delivery of audited financial statements*. (Emphasis added.)

21.     The risk factors listed in the 10-K acknowledge that Ferrellgas's "substantial indebtedness and other financial obligations could have important consequences to [Ferrellgas's] security holders," including:  "mak[ing] it more difficult for us to satisfy our obligations with respect to our securities"; "impair[ing] our ability to obtain additional financing in the future for working capital, capital expenditures, acquisitions, general corporate purposes or other purposes"; "higher interest expense"; "impair[ing] our operating capacity and cash flows"; and "plac[ing] us at a competitive disadvantage compared to our competitors that have proportionately less debt."

22.     The very next day, October 16, 2019, Standard & Poors downgraded Ferrellgas's credit rating to CCC-, noting that a default on its debt is a "virtual certainty."

## C.     Ferrell Rejects GreatBanc's Repeated Requests for Information and Ignores Potential Financing Solutions

23.     GreatBanc was watching closely as the debt piled up and the Ferrellgas unit price spiraled downward, continuously monitoring the value of the Plan assets both for purposes of its semi-annual valuation responsibilities and in furtherance of its fiduciary duties to the ESOP and participants.  To that end, GreatBanc repeatedly asked Ferrell for information regarding its financial position and the Board leadership's plan for resuscitating the value of Plan assets.

24.     In or around November 2018, GreatBanc was contacted by members of Ferrell's senior management who expressed concerns about the Board's leadership, believing it was pushing

Ferrell toward bankruptcy and playing a "dangerous game" with the Company's bondholders by failing to take steps to revive share value in the face of serious financial risk to Plan beneficiaries.

25. Upon voicing these concerns to GreatBanc, those individuals were terminated by Ferrell.

26. The following month, in or around December 2018, senior officers of GreatBanc met with Ferrell's Board to discuss management's concerns and Ferrell's future plans. The Board acknowledged that Ferrell was too heavily leveraged and assured GreatBanc that the Company was working toward a solution that would alleviate the issue while preserving (and growing) value for Plan participants. But the Board offered no information about the purported solution and thereafter took no discernable steps to lower the Company's indebtedness (or otherwise solidify its financial profile). Ferrellgas's unit price, as alleged above, has not improved.

27. In the summer of 2019, an experienced and reputable private equity firm approached GreatBanc unsolicited and proposed a recapitalization plan for Ferrell and Ferrellgas. On or about July 1, 2019, GreatBanc conveyed the proposal to Ferrell and the Board, and suggested that the Board form a special committee to consider the proposed recapitalization terms and any other viable strategic proposals.

28. On or about July 22, 2019, the Board refused, without explanation, to form a special committee or even consider the proposed recapitalization.

29. About one week later, on or about July 30, 2019, Ferrell caused its attorneys to send GreatBanc a letter reminding it that it was a "directed" trustee and unveiling a brand new amendment to the Plan – dated July 29, 2019[3] – purportedly adopted in order "to resolve any confusion or ambiguity" that may arise "over how Company Stock is to be voted." Specifically,

---

[3] A copy of the amendment to the Plan dated July 29, 2019 is appended to Exhibit A to the Complaint.

the amendment provides that "all Company Stock held in the Trust shall be voted by the Trustee as directed by the Plan Administrator."

30.     This stands in sharp contrast to what Ferrellgas repeatedly represented in its SEC filings, which provide that "[i]n all cases, the Trustee may vote [Company] shares as it determines is necessary to fulfill its fiduciary duties under ERISA."

31.     Accordingly, the apparent intent of the amendment was to circumscribe GreatBanc's ability as Trustee to preserve Plan assets and protect participants.

32.     The letter also gave GreatBanc assurances that Ferrell had retained an investment bank "to advise the Company," had "adopted several long-term strategic objectives" and was "embarking on a robust process to evaluate alternatives that meet these long-term objectives …." It did not, however, include any details whatsoever about what those "objectives" were, let alone any concrete steps Ferrell proposed to take in order to achieve them.

33.     In or around the same time frame, a number of investment bankers and financial advisors contacted GreatBanc, unsolicited, to express their interest in working with Ferrell to explore potential financing solutions. Asked by GreatBanc if they had approached Ferrell directly, they indicated that they "could not get past Jim Ferrell."

34.     Increasingly concerned about Ferrell's strategic plan to improve the Company's performance (or, more accurately, the apparent lack thereof), GreatBanc requested more information (and regular updates) about Ferrell's previous assurances, as well further dialogue and collaboration on strategic planning. It also raised the idea, as it had on prior occasions over the past year (to no avail), of expanding or modifying the Board in order to add independent directors with turnaround or restructuring experience.

4818-7177-8219 v1

35.     On or around September 3, 2019, without explanation or discussion, Ferrell flatly rejected all of those requests and suggestions, stating in conclusory fashion that it would not consider any proposals and that additional independent directors were not necessary.  Ferrell also reiterated that the Board would not consider the earlier recapitalization proposal and purported to prohibit GreatBanc from further engaging with the private equity firm.

36.     Indeed, with respect to Board composition, Ferrell was taking no chances.  The Company Bylaws expressly provide that "[a]n annual meeting of the stockholders shall be held at 9:00 am. on the 4th Thursday in August of each year" for the election of directors.[4]

37.     Historically, GreatBanc had been provided annually with a slate of candidates, for which it voted the Trust's shares (without any express direction from Ferrell).  To date, no slate has materialized and the annual election of directors mandated by the Bylaws has never occurred.

38.     On or about September 10, 2019, GreatBanc requested a meeting with the Board to understand the Board's objectives and its reasoning for not exploring the financing proposals.  Once again, Ferrell refused to entertain any discussion.

39.     Instead, on October 9, 2019, without any warning, Ferrell provided notice that it was removing GreatBanc as Trustee of the ESOP effective November 8, 2019.

40.     Ferrell's motives became apparent in short order.

41.     The removal notice predated the public revelations in the October 15, 2019 Ferrellgas 10-K by less than a week.  Meanwhile, on September 25, 2019 – two weeks ***prior to*** the removal notice to GreatBanc – TPG had issued a notice of default based on the Ferrellgas operating partnership's purported failure to deliver required financial information and compliance certificates by September 24, 2019.

---

[4] A redacted copy of Ferrell's Articles of Incorporation and Bylaws are attached hereto as Exhibit 2.

42.    Ferrell understood the consequences of a default.

43.    Following the years-long mismanagement of the Company – in a manner detrimental to the interests of Plan participants – a default would leave GreatBanc with no choice, consistent with its fiduciary obligations, but to intercede and remove the Board before the total (and irredeemable) collapse in value of Plan assets, and it would make Ferrell (and its Board) vulnerable to charges of fiduciary misconduct.

44.    With the writing emblazoned on the wall, Ferrell took the series of preemptive steps described above in an effort to entrench the Board and sideline GreatBanc – the only other ERISA fiduciary for the Plan and its participants – *e.g.*, failing to hold an annual shareholders meeting/election of directors, amending the Plan to curtail GreatBanc's ability to vote the Trust's shares in connection with a director election and removing GreatBanc as Trustee.

45.    Replacing GreatBanc with a solo practitioner as interim trustee in light of the Company's current dire circumstances constitutes yet another clear breach of Ferrell's ERISA fiduciary duties to the Plan.

46.    And, as alleged below, Ferrell's rejection of GreatBanc's request for direction and the subsequent public filing of this lawsuit was the final straw.

**D.    GreatBanc Fulfills Its Fiduciary Duties by Requesting an Instruction to Remove and Replace The Board**

47.    By mid-October, it had become abundantly clear that Ferrell would not fulfill its obligations to provide GreatBanc with information to support the Board's prior assurances about a "robust process" to meet "long-term objectives" and, given the Ferrellgas 10-K, they appeared to be hollow.  Accordingly, on or about October 23, 2019, GreatBanc informed Ferrell that Ferrell had breached its duties to the Plan by, *inter alia*, refusing to provide GreatBanc with the information required for it to monitor the value of Ferrell's shares, refusing to provide GreatBanc

16

with information concerning strategies for addressing the Plan's financial perils, and failing to explore (or even consider) potential strategic alternatives.[5]

48.     In an effort to continue to fulfill its ERISA fiduciary duties to act in the best interest of Plan participants and beneficiaries, and as the sole shareholder of Ferrell, GreatBanc also issued the Request, asking that Ferrell, as Plan Administrator, provide GreatBanc with direction to elect the New Board.  In the Request, GreatBanc also indicated that, absent such a direction, GreatBanc was prepared to take unilateral action.  In other words, pursuant to its fiduciary duties, GreatBanc was prepared to step into the shoes of the ESOP and exercise its right as Ferrell's 100% shareholder to remove and replace the Board.

49.     Ferrell publicly filed this lawsuit the next day.  In the days since, Ferrellgas stock price has dipped even further to $0.51 as of close of market on October 30, 2019.

50.     GreatBanc's hand has now been forced.  It initially sought a direction from Ferrell rather than unilaterally moving to replace the Board, in the hope of avoiding a public disagreement that could potentially destabilize the situation.  Ferrell, however, has now precipitated precisely that scenario.  And still, it has done nothing to slow (let alone reverse) the precipitous devaluation of Plan assets.  Accordingly, GreatBanc is permitted, and in fact compelled, by its ERISA fiduciary duties to the Plan to replace the Board.  By these Counterclaims, it seeks an immediate judicial declaration to that effect and associated provisional relief in order to allow it do so before it's too late.

---

[5] A redacted copy of the October 23, 2019 letter is attached hereto as Exhibit 3.

## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

51.     GreatBanc incorporates the allegations contained in the previous paragraphs of these Counterclaims as if fully set forth herein.

52.     An actual controversy exists between GreatBanc and Ferrell.  Ferrell repeatedly breached its ERISA fiduciary duties by neglecting the value of its assets and holdings (and thus, the welfare of Plan participants), affirmatively refusing to even consider viable options to preserve Plan assets and hindering GreatBanc's ability to serve as Trustee of the Plan in the best interest of Plan participants and beneficiaries.  Compelled by its own ERISA fiduciary duties as Trustee of the ESOP, GreatBanc sought Ferrell's direction to reconstitute the Board by issuing the Request. Under ERISA, a plan trustee owes the ESOP a fiduciary duty of prudence, and GreatBanc's actions in issuing the Request were taken in accordance with and in furtherance of this fiduciary duty.

53.     Ferrell has improperly and unlawfully refused the Request and GreatBanc's fiduciary duties therefore permit it to take action and vote its Ferrell stock as necessary to preserve the value of Plan assets for the benefit of Plan participants.

54.     The ESOP and Plan participants will suffer, and continue to suffer, irreparable harm if declaratory and injunctive relief is not granted.  GreatBanc has no adequate or complete remedy at law.  Declaratory and injunctive relief from this Court would be in the public's interest and is the only relief that will protect GreatBanc's rights, as Trustee of the ESOP.

## SECOND CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

55.     GreatBanc incorporates the allegations contained in the previous paragraphs of these Counterclaims as if fully set forth herein.

56.     An actual controversy exists between GreatBanc and Ferrell.  As Trustee of Ferrell's sole 100% shareholder, GreatBanc's ERISA fiduciary duties, Ferrell's corporate

governance documents and Kansas law permit GreatBanc to elect the New Board by action on written consent without direction from Ferrell.

57.     Ferrell opposes GreatBanc's effort to elect the New Board.  The ESOP and Plan participants will suffer, and continue to suffer, irreparable harm without declaratory and injunctive relief.  GreatBanc has no adequate or complete remedy at law.  Declaratory and injunctive relief from this Court would be in the public's interest and is the only relief that will protect GreatBanc's rights, as trustee of the ESOP.

## PRAYER FOR RELIEF

GreatBanc seeks relief as follows:

a)     That the Complaint be dismissed in its entirety with prejudice;

b)     That the Court enter judgment for GreatBanc and against Ferrell on all of GreatBanc's causes of action;

c)     That the Court issue a temporary restraining order that maintains the status quo by maintaining GreatBanc's status as Trustee beyond November 8, 2019 until such time as the Court has had an opportunity to rule on GreatBanc's request for a preliminary injunction;

d)     That the Court issue a preliminary injunction maintaining GreatBanc's status as Trustee until such time as the Court has had an opportunity to rule and, to the extent necessary, GreatBanc has had an opportunity to implement any favorable decision;

e)     That the Court issue an expedited declaration, pursuant to 28 U.S.C. §2201, that GreatBanc is legally entitled and empowered to elect the New Board or, alternatively, ordering Ferrell to comply with the Request and issue a direction to GreatBanc to seat the New Board;

f)     That the Court award GreatBanc its costs in this action; and

g)     That the Court award GreatBanc such other relief as is just and equitable.

4818-7177-8219 v1

## DEMAND FOR JURY TRIAL

GreatBanc hereby demands a trial by jury on all claims so triable.

Dated: November 1, 2019

*Of Counsel:*

WINSTON & STRAWN LLP
James P. Smith III (*pro hac vice* to be filed)
(NY # 2634491)
Matthew L. DiRisio (*pro hac vice* to be filed)
(NY # 4228995)
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700
Facsimile: 212-294-4700
jpsmith@winston.com
mdirisio@winston.com

Respectfully submitted,

SHOOK, HARDY & BACON

By: */s/ Todd W. Ruskamp*
      Todd W. Ruskamp, D.Kan #70412
      Jessica A. E. McKinney, D.Kan #78649

2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
truskamp@shb.com
jamckinney@shb.com

*Attorneys for Defendant/Counterclaim-Plaintiff*
*GreatBanc Trust Company*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2019, the foregoing paper was served upon Counsel for Plaintiff via the Court's ECF system.

   */s/ Todd W. Ruskamp*
Todd W. Ruskamp
Attorney for Defendant/Counterclaim-Plaintiff
GreatBanc Trust Company

4818-7177-8219 v1

# VERIFICATION

**STATE OF** _Illinois_ )
                      )
**COUNTY OF** _DuPAGE_ )

  Kevin Kolb, being duly sworn on his oath, states that he is a Senior Vice President in the Employee Stock Ownership Plans Client Services group of GreatBanc Trust Company ("GreatBanc"), has authority from GreatBanc to sign and verify GreatBanc's Verified Answer and Defenses to Plaintiff's Complaint and Counterclaims, and that the statements contained therein are true and accurate based on personal knowledge unless otherwise stated.



_____
Kevin Kolb

  Subscribed and sworn to me this _1_ day of November, 2019.

BEATA VANDER VEEN
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
August 23, 2023

_____
Notary Public

My Commission Expires:   _8-23-23_ _____